UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| SUSAN FRESE *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EMPIRE FINANCIAL SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 09-1033 (CKK) |

MEMORANDUM OPINION
(July 27, 2010)

This action was originally filed by Plaintiffs Susan Frese and Kevin McCarthy in the Superior Court for the District of Columbia and was removed to this Court by Defendant Deutsche Bank National Trust Company, as Trustee ("Deutsche Bank"). Plaintiffs' Second Amended Complaint, filed in this Court on November 9, 2009, alleges violations of the District of Columbia Consumer Protection Procedures Act (DCCPPA), D.C. Code §§ 28-3901 *et seq.*, the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, and the District of Columbia Mortgage Lender and Broker Act (MLBA), D.C. Code §§ 26-1101 *et seq.*, and also asserts claims for common law fraud, breach of fiduciary duty, and negligent supervision. The majority of these claims are asserted against Defendant Empire Financial Services ("Empire Financial"), which has filed an answer to the Second Amended Complaint; the only claim asserted against Deutsche Bank is an alleged violation of TILA. Also named as a defendant is Land Title LLC, which has not entered an appearance in this matter. Presently pending before the Court is Defendant Deutsche Bank's [26] Motion to Dismiss Plaintiffs' Second Amended Complaint. Plaintiffs have filed a response brief opposing Deutsche Bank's motion to dismiss, and Deutsche Bank has filed a reply. For the reasons explained below, the Court shall DENY Deutsche Bank's

Motion to Dismiss Plaintiffs' Second Amended Complaint.

## I. BACKGROUND

The following facts are drawn from the allegations in the Second Amended Complaint and public records of which the Court may take judicial notice.

Plaintiff Susan Frese ("Frese") is a resident of the District of Columbia who lives in a three-bedroom house at 751 Gresham Place, N.W. (the "Property"). Second Am. Compl. ("SAC") ¶ 3. Frese purchased the property in July 2005 for $275,000 with a "no down payment" mortgage obtained through Defendant Empire Financial. *Id.* ¶ 11. The mortgage was an "interest only" mortgage with an interest rate of between 6 and 7 percent, and monthly payments were approximately $1500, including escrow of taxes and hazard insurance. *Id.* Frese thought her interest rate was too high and contacted Empire Financial in the fall of 2005 and spring of 2006 to ask if better financing options were available. *Id.* ¶ 13. In the spring of 2006, an agent of Empire Financial called Frese and told her that a new program was available offering a one percent interest rate for three years. *Id.* ¶ 14. Frese expressed interest and agreed to refinance her mortgage. *See id.* ¶¶ 14-15. In mid-April 2006, approximately three weeks prior to closing, Frese asked what her monthly payments would be. *Id.* ¶ 15. The agent explained that her monthly payments would be $1000 per month or less but that the principal balance would go up by "a couple of dollars" a month. *Id.* The agent did not explain the concept of "negative amortization" or that the interest was variable and that a 3% prepayment penalty would be imposed if the loan were refinanced within three years. *Id.* ¶¶ 16-17. Frese never received any documents prior to closing. *Id.* ¶ 20.

The closing occurred on May 2, 2006, at the Property. SAC ¶ 21. An agent for Defendant Land Title LLC appeared at the Property and presented Frese with the closing

documents, which she signed. *Id.* ¶¶ 24-25. Frese noticed that the amortization documents showed her principal balance going up by $900 a month, and she interrupted the closing to call the agent at Empire Financial. *Id.* ¶¶ 26, 28. The Empire Financial agent disclaimed knowledge of the negative amortization and said he would review it and call Frese back. *Id.* ¶ 29. Relying on these statements, Frese signed the rest of the documents, and she received copies of the documents from Land Title LLC as well as checks totaling $14,000, her proceeds from the transaction. *Id.* ¶¶ 30-31. Frese noticed that the documents falsely represented that she had a pre-closing interview with the president of Empire Financial. *Id.* ¶ 35.

On December 16, 2007, Frese filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Columbia. *See* SAC ¶ 36; *In re Susan Frese*, No. 07-00681 (Bankr. D.D.C. filed Dec. 16, 2007) (hereinafter, "Bankruptcy Action"). Plaintiff Kevin McCarthy is the trustee of Frese's Chapter 7 bankruptcy estate. SAC ¶ 4. In her bankruptcy petition, Frese claimed the Property as exempt and acknowledged the loan secured by the Property, but she did not claim that the loan was disputed. *See* Voluntary Petition at Schedules C & D, Bankruptcy Action, Dkt. No. [1]. Frese listed the owner of the loan as American Home Mortgage; she did not list Defendant Deutsche Bank as a creditor in her bankruptcy filing. *See id.*; SAC ¶ 37. Frese stated to the Bankruptcy Court her intention to keep the loan collateral and continue to make regular payments. *See* Voluntary Petition at 30, Bankruptcy Action, Dkt. No. [1]. On January 11, 2008, Frese filed amended schedules with the Bankruptcy Court listing her personal property and real property claimed as exempt. *See* Summary of Schedules - Amended, Bankruptcy Action, Dkt. No. [12]. On her amended Schedule B, under the category "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Frese listed "Claim Against Empire Services & Land Title"

3

with an estimated value of "unknown." *Id.* at 4. Frese received a discharge from bankruptcy on April 8, 2008. *See* Discharge of Debtor, Bankruptcy Action, Dkt. No. [16].

On August 7, 2008, Plaintiff McCarthy filed an application with the Bankruptcy Court to employ Thomas C. Wilcox, an attorney, to:

> represent the bankruptcy estate as special counsel on monetary claims owned by the Debtor pre-petition on a fee-shifting basis in two cases: 1) a claim in DC Superior Court against Empire Financial Services and Land Title Inc. for monetary damages arising from a refinancing that took place on Ms. Frese's residence in May 2006; and 2) a claim against the firm that funded Ms. Frese's current loan, American Home Mortgage (AHM), which is currently in Chapter 11 in Delaware.

Application By Trustee to Employ Special Counsel, Bankruptcy Action, Dkt. No. [21]. According to the application, McCarthy has an agreement with Frese that with respect to the AHM litigation, Frese will receive any equitable relief recovery and the bankruptcy estate will receive any monetary relief recovery (with special counsel receiving one-third of the value of the total recovery plus expenses). *Id.* On August 29, 2008, the Bankruptcy Court granted the application, which was unopposed. *See* Bankruptcy Action, Dkt. No. [23]. On December 17, 2008, Deutsche Bank entered an appearance in the Bankruptcy Court (as "Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-7, c/o American Home Mortgage Servicing, Inc.") and filed a Motion for Relief from Automatic Stay, noting that it had a security interest in the Property and that Frese had defaulted on her loan, owing over $350,000. *See* Motion for Relief from Automatic Stay, Bankruptcy Action, Dkt. No. [25]. Deutsche Bank sought an order enabling Deutsche Bank to foreclose on the Property. *Id.* Deutsche Bank's motion was the first notice Frese had that anyone other than American Home Mortgage owned her loan. SAC ¶ 44. Deutsche Bank's motion, which was unopposed, was granted by the Bankruptcy Court on January 6, 2009. *See* Order Granting Relief from Automatic

4

Stay, Bankruptcy Action, Dkt. No. [30].

On January 7, 2009, Frese filed this action in Superior Court for the District of Columbia, which Deutsche Bank removed to this Court.[1] Deutsche Bank has agreed not to foreclose on the Property while this action is pending. *See* SAC ¶ 46. Count I of the Second Amended Complaint alleges that Empire Financial and Land Title LLC violated the DCCPPA by, *inter alia*, failing to provide Frese with written disclosures and misrepresenting material facts regarding her refinance loan. *Id.* ¶ 52. Count II asserts a claim of common law fraud against Empire Financial for allegedly making false representations to Frese about her refinance loan with intent to deceive her. *See id.* ¶¶ 56-58. In Count III, Plaintiffs claim that Deutsche Bank is vicariously liable for violations of the Truth in Lending Act that occurred during the closing, such as the alleged failure to disclose materials terms of the loan including the finance charge and amount financed. *Id.* ¶ 64. Count IV asserts a claim under the D.C. Mortgage Lender and Broker Act against Empire Financial for allegedly failing to provide Frese with an accurate financing statement prior to closing and closing the refinancing at a residential location. *Id.* ¶ 71. Count V asserts a claim of breach of fiduciary duty against Empire Financial and Land Title LLC for allegedly failing to act in Frese's best interests regarding the refinance loan. *Id.* ¶¶ 77-83. Count VI asserts a claim of negligent supervision against Empire Financial for its alleged failure to supervise its agent in a satisfactory manner. *Id.* ¶¶ 87-93. Plaintiffs pray for rescission of the loan agreements as well as monetary damages.

---

[1] It is unclear from the record whether Plaintiff Kevin McCarthy was properly named as a party prior to the filing of the Second Amended Complaint. Although the Amended Complaint filed in Superior Court lists "Susan Frese et al" in the caption, there is no mention of McCarthy in the body of the Amended Complaint, and the allegations frequently refer to "Plaintiff" in the singular. The Court finds this issue to be inconsequential for purposes of resolving the pending motion.

## II. LEGAL STANDARD

Deutsche Bank has moved to dismiss the claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff

must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950. In evaluating a motion to dismiss under Rule 12(b)(6), the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

### III. DISCUSSION

Deutsche Bank moves to dismiss the TILA claim asserted against it in the Second Amended Complaint, which prays for rescission of the refinance loan. Deutsche Bank propounds three grounds for its motion: (1) Plaintiffs have failed to allege sufficient facts to state a claim against Deutsche Bank for rescission under TILA; (2) Plaintiffs' counsel is not authorized by the Bankruptcy Court to bring a rescission claim against Deutsche Bank; and (3) Plaintiffs are judicially estopped from pursuing this litigation because they adopted an inconsistent position before the Bankruptcy Court. The Court shall consider each in turn.

 A. *Deutsche Bank and the Alleged TILA Violation*s

The Court begins by noting that the allegations regarding Deutsche Bank in the Second

Amended Complaint are rather limited. Plaintiffs allege that Frese was unaware that Deutsche Bank was a creditor when she filed her bankruptcy petition and that McCarthy was unaware that Deutsche Bank had purchased the loan when he filed the application to employ special counsel to represent the bankruptcy estate. *See* SAC ¶¶ 37, 40. Plaintiffs then explain that Deutsche Bank entered the bankruptcy action as "Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-7, c/o American Home Mortgage Servicing, Inc."[2] but did not file any documents supporting its claim that it was the proper holder of the security interest in the Property. *See id.* ¶ 43. Plaintiffs then allege that "Deutsche Bank is vicariously responsible for any TILA violations incurred at closing, including but not limited to the following: [a] Failing to providing [sic] the proper finance charges, amount financed and APR disclosures; [b] Untimely and incorrect disclosures for the Loan; and [c] Nonexistent disclosure with respect to the required GFE[.]" *Id.* ¶ 64. Plaintiffs pray for rescission of the loan, plus reasonable costs and attorneys' fees and any other relief the Court deems proper. *Id.* ¶ 65.

The Truth in Lending Act governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose to borrowers certain details and conditions regarding their loans. For example, creditors must disclose the "amount financed," the "finance charge," and the "annual percentage rate" applicable to the loan. *See* 15 U.S.C. § 1638(a). In addition, lenders who secure an interest in the borrower's home must provide "good faith estimates" (GFEs) of these disclosures in writing at least seven business days before a transaction is consummated. *Id.* § 1638(b)(2). TILA also provides such borrowers with a right of rescission that may be exercised within three business days after a transaction is consummated or after the required disclosures are

---

[2] Deutsche Bank explains that this is "the securitization pool in which Frese's loan was placed." Def.'s Mem. at 5.

delivered, whichever occurs later. *See id.* § 1635(a). Plaintiffs claim that Frese never received the required disclosures prior to closing, *see* SAC ¶ 20, and that she therefore has a right to rescind the refinance transaction under TILA.[3]

Because there are no allegations in the Second Amended Complaint that Deutsche Bank was involved in the origination of the loan or otherwise acted as a creditor as defined by TILA, Plaintiffs rely on a theory of assignee liability. TILA provides that the assignees of creditors who violate TILA may be liable in certain circumstances. *See* 15 U.S.C. § 1641(a) ("Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under [15 U.S.C. § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.") Deutsche Bank argues that there is no assignee liability in this case because Plaintiffs have not alleged facts showing a violation by the creditor that is apparent on the face of any disclosures. *See* Def.'s Mem. at 7. Plaintiffs argue that because their claim is based on a failure to make required disclosures, they are not required to show that the disclosures were facially deficient. *See* Pl.'s Opp'n at 7-8. Both parties ignore § 1641(c), which states that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). Because

---

[3] It is clear from the Second Amended Complaint, and the parties agree, that Plaintiffs are pursuing a claim for rescission rather than a claim for civil damages under TILA. TILA rescission claims are generally brought under 15 U.S.C. § 1635, whereas civil damages actions are authorized by 15 U.S.C. § 1640. Plaintiffs cite to § 1640 in paragraph 65 of their Second Amended Complaint, but this appears to be for the purpose of seeking costs and reasonable attorneys' fees, which may be awarded to successful rescission claimants pursuant to 15 U.S.C. § 1640(a)(3).

9

rescission under § 1635 is distinct remedy under TILA, assignees are liable for violations even if they are not "apparent on the face of the disclosure." *Parker v. Potter*, 232 F. App'x 861, 865 (11th Cir. 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760, 765 n.3 (N.D. Ill. 2006). Therefore, Plaintiffs may pursue their rescission claim against Deutsche Bank if they have properly stated a claim for rescission under § 1635.

Deutsche Bank argues that the allegations in the Second Amended Complaint are insufficient to establish a TILA violation because Plaintiffs' pleadings are too "bare-bones" to provide Deutsche Bank with fair notice of the circumstances, events, and occurrences giving rise to their claim. *See* Def.'s Mem. at 5. However, Plaintiffs have alleged that Frese was not provided with disclosures pertaining to, among other things, the finance charges, the amount financed, the annual percentage rate, and the "good faith estimates" of these disclosures. *See* SAC ¶ 64. These allegations are sufficient to put Deutsche Bank on notice of the nature of the claims being asserted. Plaintiffs' failure to describe in more detail what they mean by "untimely and incorrect disclosures for the Loan," *id.*, does not mandate dismissal of their claim at the pleading stage.

Deutsche Bank also argues that Plaintiffs' rescission claim must fail because other allegations in the Second Amended Complaint show that Frese did in fact receive the mandated disclosures. For example, Frese alleges that she was "presented . . . with the closing documents" which explained how her loan would amortize. *See* SAC ¶¶ 24, 26. Deutsche Bank also argues that the allegation pertaining to "[u]ntimely and incorrect" disclosures shows that Frese did receive disclosures, contradicting Plaintiffs' claim that disclosures were not made. The Court is not persuaded by Deutsche Bank's argument. Plaintiffs do not allege that they received all required TILA disclosures, nor do their allegations regarding untimely and imcomplete

10

disclosures constitute "written acknowledgment of receipt of any disclosures" sufficient to establish a rebuttable presumption of delivery under § 1635(c). Construed logically and in the light most favorable to the Plaintiffs, the Second Amended Complaint alleges that Frese never received certain disclosures required by TILA and that other disclosures were untimely and/or incorrect. Therefore, she has stated a claim for rescission under § 1635.[4]

Deutsche Bank lastly argues that Plaintiffs cannot prevail on their rescission claim because in order to rescind the loan, they must return the loan principal, *see* 15 U.S.C. § 1635(b), which Deutsche Bank claims they are incapable of doing. Section 1635(b) provides as follows:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. *Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor*, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b) (emphasis added). Deutsche Bank points out that as of November 22, 2008, the unpaid principal balance of the loan was $344,511.74, whereas the assessed value of the Property was only $255,460.00. *See* Motion for Relief from Automatic Stay ¶¶ 11-12, Bankruptcy Action, Dkt. No. [25]. Deutsche Bank argues that the claim should be dismissed

---

[4] Deutsche Bank has not argued that Frese's refinancing loan is exempt from the right of rescission pursuant to § 1635(e)(2), and it is unclear from the record whether this exemption applies.

because Plaintiffs have not pled their ability or willingness to tender the full value of the principal. Several courts have held that a rescission claim should be dismissed (with leave to amend) for failure to allege an ability to tender the principal to the creditor. *See, e.g.*, *Montoya v. Countrywide Bank, F.S.B.*, No. C09-00641, 2009 WL 1813973, at * 5 (N.D. Cal. June 25, 2009). However, this Court is not persuaded that ability to tender is a pleading requirement for a TILA rescission claim. As the D.C. Circuit noted in *Brown v. National Permanent Federal Savings and Loan Association*, 683 F.2d 444 (D.C. Cir. 1982) (per curiam), § 1635(b) does not require that a debtor tender first; it is the creditor that must tender before the borrower's obligation arises. *Id.* at 447. Because the statute states that the security interest becomes void once the right to rescind is exercised, a rescission claimant should not be required to plead an ability to tender the property to the creditor. Moreover, several courts have recognized that inability to tender is a factual question more appropriate for resolution on summary judgment. *See, e.g.*, *Moore v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 612, 616-17 (E.D. Va. 2009).

Courts are, however, free to exercise equitable discretion to modify rescission procedures, and rescission under TILA may be conditioned on the debtor's return of any money received. *Id.*; 15 U.S.C. § 1635(b). Although the Court finds that it is not appropriate to modify the rescission procedure at the motion to dismiss stage, it may require Plaintiffs to prove an ability to tender the principal balance before ordering rescission.

  B.  *Authorization for this Lawsuit*

Deutsche Bank contends that the TILA claim asserted by Plaintiffs in this action goes beyond the scope of the representation authorized by the Bankruptcy Court in its order approving the employment of special counsel by the bankruptcy estate pursuant to 11 U.S.C. § 327(e). Specifically, Deutsche Bank argues that the Bankruptcy Court approved the employment of

special counsel to pursue "monetary claims" against Empire Financial, Land Title, and American Home Mortgage, not a rescission claim against Deutsche Bank. Plaintiffs counter that the Bankruptcy Court's order was clearly intended to encompass claims that might be asserted against the assignees of Empire Financial, Land Title, and American Home Mortgage, although they fail to address the fact that the Bankruptcy Court's order focuses on "monetary claims."

Assuming *arguendo* that Deutsche Bank's reading of the Bankruptcy Court's order is correct, it is unclear why this would require dismissal of Plaintiffs' rescission claim, as urged by Deutsche Bank. The Bankruptcy Court's order pertains only to the employment of special counsel under 11 U.S.C. § 327(e); it does not affect the trustee's authority under the Bankruptcy Code to bring actions on behalf of the estate. Plaintiffs point out that Deutsche Bank does not argue that the trustee lacks authorization to bring a rescission claim; Deutsche Bank argues only that Plaintiffs' *counsel* lacks authorization. Whether Plaintiffs' counsel has been authorized by the Bankruptcy Court to litigate matters on behalf of the estate is a matter that must be resolved by the Bankruptcy Court; it does not affect his ability to litigate claims in this Court. *See Palmer v. Statewide Group*, 134 F.3d 378, 1998 WL 42248, at *3-4 (9th Cir. Feb. 2, 1998) (table) (finding that district court could award attorneys' fees to counsel representing bankruptcy trustee who prevailed on TILA rescission claim despite lack of bankruptcy court order approving counsel's representation). Therefore, the Court shall not dismiss the claim against Deutsche Bank on this basis.

C.     *Judicial Estoppel*

Deutsche Bank argues that Plaintiffs are judicially estopped from asserting a rescission claim against Deutsche Bank in this action because they disclaimed any intent to seek rescission during the bankruptcy proceedings. "Courts may invoke judicial estoppel '[w]here a party

13

assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position.'" *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792 (D.C. Cir. 2010) (quoting *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010)). There are at least three questions a court generally considers in deciding whether to apply judicial estoppel:

> (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*Id.* at 798 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Before the Court can begin its analysis of judicial estoppel, the issue of standing must be addressed. Generally speaking, when a debtor files for bankruptcy under Chapter 7 of the Bankruptcy Code, all pre-petition claims become property of the bankruptcy estate, and only the trustee has standing to pursue the claim. *See* 11 U.S.C. § 541(a) (providing that "all legal or equitable interests of the debtor in property" become property of the estate upon the commencement of the case); *Moses v. Howard Univ. Hosp.*, 606 F.3d at 795 ("The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate.")[5] Because the TILA rescission claim existed prior to Frese's filing for bankruptcy protection, that rescission claim belongs to the bankruptcy estate and may only be asserted by the

---

[5] If the bankruptcy trustee abandons the claim under 11 U.S.C. § 554, the debtor may pursue it. *Moses*, 606 F.3d at 795. However, there is no evidence that the trustee has abandoned the rescission claim in this case; to the contrary, the trustee is actively pursuing it through this litigation.

14

trustee, who is a co-plaintiff in this action. *See Guerpo v. Amresco Residential Mortgage Corp.*, 13 F. App'x 649, 650 (9th Cir. 2001) (holding that debtor's pre-petition TILA rescission claims became part of the bankruptcy estate and affirming dismissal of debtor for lack of standing). Thus, the question is not whether *Frese* is estopped from asserting the rescission claim, as she lacks standing to assert it, but whether the *trustee*, McCarthy, is judicially estopped from doing so. Unfortunately, the parties have largely ignored this distinction in their briefing, relying on cases in which only the debtor is asserting a claim.

The record shows that Frese indicated in her initial bankruptcy petition that American Home Mortgage held a secured claim on the Property and that Frese did not dispute this claim. Indeed, Frese indicated in her petition that she would retain the collateral and continue to make regular payments on the loan. Frese then amended her schedules to list a "Claim Against Empire Services & Land Title." Frese was then granted a discharge from her debts by the Bankruptcy Court. Following the discharge, McCarthy, as trustee for the estate, filed his application to employ special counsel for the purpose pursuing claims against Empire Financial, Land Title LLC, and American Home Mortgage; that application was granted by the Bankruptcy Court as unopposed. Deutsche Bank then moved for relief from the automatic stay so that it could foreclose on the Property, and this relief was also granted by the Bankruptcy Court as unopposed.

Courts have routinely held that judicial estoppel is appropriate when a debtor fails to identify a claim in a bankruptcy proceeding and then proceeds to assert that claim in a separate judicial action. *See Moses v. Howard Univ. Hosp.*, 606 F.3d at 798 ("[E]very circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case."); *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 43-44 (D.D.C.

2008) (citing cases). Although Frese did amend her schedules to reflect a claim against Empire Financial and Land Title LLC, she failed to list any claim (such as rescission) against the lender (American Home Mortgage) prior to receiving her discharge from the Bankruptcy Court. Plaintiffs concede as much in their opposition brief, noting that "while the Amended Schedules may not have specifically referenced litigation against the lender, the Application For Employment did." Pls.' Mem. at 10. But the application to employ special counsel was filed by McCarthy months *after* Frese received her discharge, so it is clear that Frese failed to disclose her rescission claim to the Bankruptcy Court, and the Bankruptcy Court discharged her based on the representations she made to it. Thus, judicial estoppel may be appropriate for Frese. However, as noted above, it is the trustee, McCarthy, who is pursuing this rescission claim, and therefore the Court must determine whether the principles of judicial estoppel are met with respect to McCarthy. *See Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (finding that although the debtor had taken inconsistent positions in bankruptcy court and district court, judicial estoppel should not be applied to the trustee, who had not taken any inconsistent position).

Plaintiffs contend that McCarthy did not take an inconsistent position before the Bankruptcy Court because he disclosed the possibility of a rescission claim against Deutsche Bank in his application to employ special counsel. As noted in the previous section, Deutsche Bank construes this application as pertaining solely to monetary claims against the lender and not encompassing any rescission claims that might be asserted against an assignee. It is true that the application refers to "monetary claims owned by the Debtor pre-petition." However, there is also language in the application that suggests a rescission claim was contemplated. The application describes "two cases" that will be brought: (1) "a claim in DC Superior Court against Empire

16

Financial Services and Land Title Inc. *for monetary damages* arising from a refinancing that took place on Ms. Frese's resident in May 2006," and (2) "a claim against the firm that funded Ms. Frese's current loan, American Home Mortgage (AHM)." Application By Trustee to Employ Special Counsel ¶ 3 (emphasis added). The omission of "for monetary damages" in the description of the claim against AHM suggests the possibility of a rescission claim against the lender. The application further states that "[a]s to the AHM litigation, Ms. Frese will receive any equitable relief recovery (including loan reduction), [and] the estate will receive any monetary relief recovery." *Id.* Although "loan reduction" is not equivalent to the remedy of rescission, the explicit mention of equitable relief recovery implies that a rescission claim might be brought by the trustee. Plaintiffs also point out that if the Bankruptcy Court had any doubt about the trustee's intentions in light of Frese's earlier statement of intention regarding the loan, it could have inquired about it.

Judicial estoppel is an equitable doctrine subject to the sound discretion of the Court. *New Hampshire v. Maine*, 532 U.S. at 750. Based on the present record, the Court is unable to conclude that McCarthy should be judicially estopped from proceeding with the rescission claim against Deutsche Bank. Although Frese has received a discharge from the Bankruptcy Court, the bankruptcy proceedings remain open, and Deutsche Bank has failed to explain how McCarthy will be unfairly advantaged by pursuing the rescission claim. Although the trustee might be faulted for failing to ensure that the rescission claim was included on Frese's amended schedules, it appears that he attempted to inform the Bankruptcy Court through his application to employ special counsel of his intention to pursue a claim for equitable relief against the lender. Indeed, the Bankruptcy Court explicitly approved the arrangement by which the trustee would allow Frese to keep the benefits of equitable relief. Therefore, the Court finds that the doctrine of

judicial estoppel should not be applied based on the present record.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant Deutsche Bank's [26] Motion to Dismiss Plaintiffs' Second Amended Complaint.  An appropriate Order shall accompany this Memorandum Opinion.


Date: July 27, 2010

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge